**E-Filed 3/30/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CARLOS M. HERNANDEZ,<br><br>                     Plaintiff,<br><br>          v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>                     Defendant. | Case Number C 05-04639 JF<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING FOR FURTHER PROCEEDINGS.<br><br>[re: docket nos. 14, 16] |

        Plaintiff Carlos M. Hernandez ("Hernandez") seeks reversal of a decision by Defendant Commissioner of Social Security ("Commissioner") denying him supplemental security income benefits. The challenged decision was rendered by Administrative Law Judge Brenton Rogozen (the "ALJ") on June 30, 2005. The ALJ's decision became final when the Appeals Council of the Social Security Administration denied Hernandez's request for review of the ALJ's decision on September 20, 2005. Hernandez filed a motion for summary judgment on August 4, 2006.

---

        [1] This disposition is not designated for publication and may not be cited.

1    The Commissioner filed a cross-motion for summary judgment on September 1, 2006.

2    Hernandez filed a reply on September 25, 2006.  The matter was submitted without oral

3    argument.

4                                    **I. BACKGROUND**

5           Hernandez is a fifty year old man with a limited education level.  Tr. 12.   He has worked

6    in the past as a janitor and a dishwasher/server for a convalescent home.  Tr. 12, 191.  He filed an

7    application for supplemental security income benefits on November 19, 2003, alleging a

8    disability since June 1, 2002.  *Id*.  The Social Security Administration denied the application

9    initially and upon reconsideration.  Tr. 27, 32.  Hernandez alleges that he became disabled due to

10   problems with his right leg, bleeding ulcers, a learning disability, and depression.  Tr. 12.

11   Pursuant to his request, the ALJ held a *de novo* administrative hearing on June 15, 2005 in San

12   Jose, California.  *Id*.  Hernandez, who was represented by counsel, testified at the hearing, but

13   there were no additional witnesses.  *Id*.

14          The ALJ found that Hernandez is not disabled within the meaning of the Social Security

15   Act and therefore is not entitled to the benefits for which he applied.  After consideration of the

16   entire record, including medical opinions described below, the ALJ found that Hernandez has not

17   engaged in substantial gainful activity since the alleged onset of the disability,  Tr. 17, and that he

18   suffers from a severe "foot disorder" that does not meet or medically equal one of the listed

19   impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 12.  The ALJ found that

20   Hernandez's learning disability was "non-severe."  Tr. 15.  The ALJ also noted that Hernandez

21   has a history of alcohol abuse, but stated that it was not material to the determination of

22   disability.  Tr. 12.

23          The ALJ made the following findings with respect to the period from June 1, 2002 to

24   May 25, 2005: (i) that Hernandez had the residual functional capacity to perform a full range of

25   light work, as defined by 20 CFR § 416.967(b); that he could lift and/or carry up to twenty

26   pounds occasionally and ten pounds frequently, stand, walk and/or sit for up to six hours in an

27   eight-hour workday, and sit for six hours in an eight-hour workday.  Tr. 17.  The ALJ also found

28

1  that as of May 26, 2005, Hernandez had the residual functional capacity to perform a full range

2  of sedentary work, as defined by 20 CFR § 416.967(a). *Id*.  Specifically, the ALJ found that

3  Hernandez could lift and/or carry up to ten pounds occasionally, stand and/or walk up to two

4  hours in an eight-hour workday, and sit for six hours in an eight-hour workday. *Id*.

5         The ALJ stated that Hernandez is unable to return to his past relevant work as a janitor,

6  which requires a medium level of exertional work.  Tr. 16.  During the hearing, Hernandez

7  explained that he was unable to return to work because of right leg pain resulting from post-polio

8  syndrome.  Tr. 15.  Hernandez underwent a second corrective foot surgery a few weeks before

9  the hearing on May 26, 2005.  Tr. 193.  The ALJ stated that he had considered Hernandez's

10  statements regarding pain and other symptoms, and found the statements to be not credible to the

11  extent that Hernandez claims he cannot engage in any substantial gainful activity.  Tr. 15.  The

12  ALJ then found that there are other jobs that Hernandez could do in the national economy

13  considering his age, education, vocational background, and maximum sustained work capacity.

14  Tr. 16.

15                            **II.  LEGAL STANDARD**

16  **A.  Standard for Reviewing the Commissioner's Decision**

17         Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the

18  Commissioner's decision denying Plaintiff benefits.  The Commissioner's decision (here the

19  decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is

20  based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523

21  (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this context, the

22  term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it

23  is such relevant evidence that a reasonable mind might accept as adequate to support the

24  conclusion." *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257.  When determining whether

25  substantial evidence exists to support the ALJ's decision, the Court examines the administrative

26  record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at

27  1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support

28

Case No. C 05-04639 JF
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING FOR
FURTHER PROCEEDINGS.
(JFEX1)

1    more than one rational interpretation, the Court must defer to the decision of the ALJ. *Moncada*,

2    60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

3    **B. Standard for Determining Disability**

4            A person is "disabled" for purposes of receiving social security benefits if he or she is

5    unable to engage in any substantial gainful activity due to a physical or mental impairment which

6    is expected to result in death or which has lasted or is expected to last for a continuous period of

7    at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th

8    Cir. 1984).  In the first step, the Commissioner must determine whether the claimant currently is

9    engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.

10   *Id.*  If the claimant is not currently engaged in substantial gainful activity, the second step

11   requires the Commissioner to determine whether the claimant has a "severe" impairment or

12   combination of impairments which significantly limits the claimant's ability to do basic work

13   activities; if not, a finding of "not disabled" is made and the claim is denied.  *Id.*  If the claimant

14   has a "severe" impairment or combination of impairments, the third step requires the

15   Commissioner to determine whether the impairment or combination of impairments meets or

16   equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are

17   awarded.  *Id.*  If the claimant's impairment or combination of impairments does not meet or

18   equal an impairment in the Listing, the fourth step requires the Commissioner to determine

19   whether the claimant has sufficient "residual functional capacity"[2] to perform his or her past

20   work; if so, the claimant is not disabled and the claim is denied.  *Id.*  The plaintiff has the burden

21   of proving that he or she is unable to perform past relevant work.  *Drouin*, 966 F.2d at 1257.  If

22   the claimant meets this burden, a *prima facie* case of disability is established.  The Commissioner

23   then bears the burden of establishing that the claimant can perform other substantial gainful

24

25

26   _____

27          [2]A claimant's residual functional capacity is what he or she can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir.

28   1989).

1   work;[3] the determination of this issue comprises the fifth and final step in the sequential analysis.

2   20 C.F.R.§§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as*

3   *amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

4                                            **III. DISCUSSION**

5        Hernandez claims that the ALJ (1) failed to develop the record, (2) failed to consider the

6   existing evidence limiting Hernandez's weight-bearing and evaluating his ability to perform light

7   or sedentary work, (3) concluded improperly that Hernandez's learning disability was "not

8   severe," and (4) rendered an improper credibility finding.  The Commissioner argues that the

9   ALJ properly assessed the medical evidence.

10   **A.   Development of the Record**

11        Hernandez asserts that the ALJ failed to develop the administrative record fully and fairly

12   because it does not contain complete copies of records from Hernandez's treating sources that

13   indicate his post-polio condition and learning disability.  His new counsel has submitted

14   additional treatment and education records from the time period before the June 15, 2005

15   hearing,[4] as well as post-hearing evidence.  Mot. Summ. J. at 9.  The Commissioner contends

16   that the record was fully developed even without the additional medical and education records.

17   Cross Mot. Summ. J. at 2.

18        **1.  Post-Polio Condition**

19        Hernandez argues that the record does not reflect the complete records of his treating

20   sources.  Mot. Summ. J. at 9.  The evidence before the ALJ consisted of only fourteen pages.

21   Mot. Summ. J. at 9; Tr. 143-48, 172-74, 175, 176-80.  Hernandez also asserts that this

22

23        [3] There are two ways for the Commissioner to meet the burden of showing that there is
other work in significant numbers in the national economy that claimant can do:  (1) by the

24   testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines.
*Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

25

26        [4] Hernandez also submitted medical evidence dated after the hearing.  For the purposes of
this decision, the Court will analyze only the pre-hearing evidence.  *See* 20 C.F.R. §§ 404.970(b),

27   416.1470(b) (new and material evidence is considered only when it relates to a period on or

28   before the date of the ALJ's decision).

1   incomplete record cannot be considered substantial evidence to sustain the ALJ's finding that

2   Hernandez does not suffer from post-polio syndrome and can perform work at the light and

3   sedentary levels.  Mot. Summ. J. at 10.

4        In reaching his decision, the ALJ relied upon the report of Dr. Clark E. Gable, M.D. ("Dr.

5   Gable").  Tr. 13.  Dr. Gable performed a consultative internal medicine evaluation with

6   Hernandez, and diagnosed Hernandez with deformities of the right foot with some mild foot drop

7   and some mild atrophy of the lower right leg, particularly the calf.  He then stated that these

8   findings are compatible with spastic weakness and not polio.  Tr.155.  The ALJ found Dr.

9   Gable's report to be very persuasive.  Tr. 13.  In accepting Dr. Gable's conclusion, the ALJ gave

10  less weight to the prognosis of  Dr. Jeffrey Spanko, DPM ("Dr. Spanko") who found that

11  Hernandez suffered from post-polio syndrome in his right leg.  The ALJ noted that he had a copy

12  of Dr. Spanko's prognosis, but then stated: "the actual operative notes, however, are not

13  contained in the Record."  Tr. 15.  Hernandez argues that at that point the ALJ should have

14  suspected that other medical records were likely missing.  Mot. Summ. J. at 10.

15       Generally, the ALJ has an "independent duty to fully and fairly develop the record" and to

16  assure that both the represented and unrepresented claimants' interests are considered.

17  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ also has a duty to conduct

18  an appropriate inquiry if the record is ambiguous or inadequate.  *Smolen v. Chater*, 80 F.3d 1273,

19  1288 (9th Cir. 1996).  Here, although the ALJ noted that the operative records were missing, he

20  never requested these records after the hearing.  Nor did the ALJ keep the record open after the

21  hearing to allow supplementation of the record or order a consultative examination when the

22  medical evidence was found to be incomplete or unclear.

23       In addition to identifying gaps in the record, Hernandez must then show that the evidence

24  not considered by the ALJ  bears directly and substantially on the matter in dispute, and that there

25  is a reasonable possibility that the evidence would have changed the Commissioner's decision.

26  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  The first category of newly submitted

27  evidence consists of records from Santa Clara Valley Medical Center from January 17, 2005

28

1   through June 16, 2005.  These represent the operation notes that the ALJ found to be absent at

2   the hearing.  This evidence includes notations from Dr. Spanko detailing Hernandez's history of

3   post-polio syndrome of the right leg.  Ex. B.  The documentation could have helped the ALJ

4   decide that Hernandez suffered from post-polio syndrome.  The second category of newly

5   submitted evidence consists of additional records from the Department of Corrections that also

6   diagnose Hernandez with post-polio syndrome in his right leg.  The ALJ noted in his opinion that

7   the one-page record from the Department of Corrections did not support findings demonstrating

8   the severity of Hernandez's condition.  The ALJ noted, "Dr. Vong did not make a diagnosis or

9   any objective medical findings," Tr. 14, but did not inquire into further records from Dr. Vong.

10  These records indicate that in 2004, Dr. Vong of the Department of Corrections diagnosed

11  Hernandez with chronic right foot tarsaglia with deformity, and a subsequent progress note

12  reported that his foot had a decreased range of motion and painful limiting gait secondary to post-

13  polio syndrome.  Ex. A.

14        The Court concludes that the further detail supporting Dr. Spanko's diagnosis and the

15  concurring diagnosis of Dr. Vong are sufficient to establish a reasonable possibility that the

16  Commissioner would have reached a contrary decision.  It is likely that if he had known more

17  about the opinions of Dr. Spanko and Vong, the ALJ would have had a medical expert testify at

18  the hearing to resolve or at least address the differing medical opinions.  Without this evidence

19  before him, the ALJ was unable to make a properly informed decision regarding the severity of

20  Hernandez's foot disorder, the duration of the disability or Hernandez's sitting, standing or

21  walking limitations.

22        While Hernandez's former attorney should have submitted all relevant medical records to

23  the ALJ, the ALJ retains the obligation to "fully and fairly develop the record" and to assure that

24  both represented and unrepresented claimants' interests are considered.  *Tonapetyan*, 242 F.3d at

25  1150 (9th Cir. 2001).  In light of the evidence now in the record, the Court concludes that the

26  ALJ did not develop the record adequately or satisfy his obligation to inquire thoroughly with

27  respect to all relevant facts.  Accordingly, the case will be remanded for augmentation of the

28

Case No. C 05-04639 JF
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING FOR
FURTHER PROCEEDINGS.
(JFEX1)                                    7

record in light of all relevant evidence.

**2. Learning Disabilities**

Hernandez also claims that the ALJ failed to develop the record with respect to his learning disability. During the hearing, Hernandez testified that he has difficulties writing, and that he can read only at the third grade level. Tr. 152. The consultative psychologist, Dr. Ute Kollath, Ph.D (Dr. Kollath), diagnosed Hernandez with borderline intellectual functioning. Tr. 157. The additional evidence from Dr. Kollath's exam will be discussed in further detail below. Hernandez claims that the ALJ should have obtained his high school transcripts in order to analyze the severity of his learning disability. Hernandez submitted his high school transcripts as part of his motion for summary judgment. Ex. C. However, the Court concludes that Hernandez suffered no prejudice from the ALJ's failure to request his high school transcripts. Dr. Kollath's examination provided more contemporaneous results regarding Hernandez's potential mental limitations. The Court concludes that the ALJ properly developed the record regarding Hernandez's alleged learning disability.

**B. ALJ's Consideration of Evidence Regarding Hernandez's Limited Weight-bearing**

Hernandez asserts that the ALJ erred in failing to consider the record in its entirety when determining that Hernandez could perform light or sedentary work. While it appears that the ALJ's findings on this issue are supported by the record as it currently stands, development of the record with respect to the condition of Hernandez's foot may impact the ALJ's findings. The ALJ should consider the issue on remand.

**C. ALJ's Assessment of Hernandez's Mental Impairments**

Hernandez argues that the ALJ improperly rejected his mental impairments as "non-severe" at the second step of the disability analysis assessment, and that the ALJ lacked substantial evidence to dismiss the mental impairment claims. Mot. Summ J. 18. The Commissioner asserts that there is no evidence of a medically-determinable severe mental impairment that would support the finding of a learning disability.

Hernandez refers to Dr. Kollath's consultative examination of Hernandez in 2003 during

1    which Dr. Kollath performed a variety of psychological tests.  Mot. Summ. J. 19.  The full scale

2    IQ score of 64 placed Hernandez in the mild mental retardation range.  Tr. 156.  Hernandez also

3    received a verbal IQ score of 71 and a performance IQ score of 62.  *Id*.  Dr. Kollath reported that

4    Hernandez was unable to recite the alphabet or complete serial 3s.  Tr. 158.  In her report, Dr.

5    Kollath diagnosed Hernandez with adjustment disorder with mixed disturbance of emotions and

6    conduct, antisocial personality disorder, and borderline intellectual functioning, rather than mild

7    mental retardation.  *Id*.  Dr. Kollath explained that her clinical impressions led her to conclude

8    that some of the test results underestimated Hernandez's intellectual level of functioning.  Tr.

9    159.  In her notes regarding Hernandez's performance on the Rey's 15 Item Test, Dr. Kollath

10   states that "results were characteristic of malingering."  *Id*.

11          Hernandez scored below on the Wechsler Memory Scale - III general memory index

12   ("WMS-III") which is considered in the impaired range.  Moreover, Dr. Kollath noted that on

13   both the Wechsler Adult Intelligence Scale - III, and WMS-III, Hernandez's low results appeared

14   to be an underestimate of his memory and intellectual functioning and that variable motivation

15   might account for the low results.  Tr. 159.  Dr. Kollath further asserted that Hernandez is

16   capable of performing "simple repetitive" tasks, and that he is "unable to perform detailed and

17   complex tasks."  Tr. 160.  The ALJ did not find persuasive Dr. Kollath's assessment that

18   Hernandez can do only simple and repetitive tasks.  Tr. 13.

19          Hernandez argues that the ALJ did not properly consider Dr. Kollath's consultative

20   report, and "failed to meet, either explicitly or implicitly, the standard of clear and convincing

21   reasons required to reject an uncontradicted opinion of an examining psychologist."  *Edlund v.*

22   *Massanari*, 253 F.3d 1152, 1158-59 (9th Cir. 2001).  The record shows that the ALJ did not

23   agree with Dr. Kollath's opinion that Hernandez was capable of performing only simple

24   repetitive tasks because he did not think that the mental status examination revealed any

25   significant mental deficits.  Tr. 13-14, 16.  The ALJ found the rest of Dr. Kollath's report

26   persuasive.  The ALJ's reliance on the part of Dr. Kollath's report he found correct is proper

27   because it is unnecessary for an ALJ to agree with everything a medical source states in order for

28

1    the opinion to be considered substantial evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th

2    Cir. 1989).   The determination of no mental disability also is supported by the state agency

3    medical consultant's finding in a psychiatric review that Hernandez did not have a severe mental

4    impairment or combination of impairments.  Tr. 154.  Accordingly, substantial evidence supports

5    the ALJ's finding that Hernandez did not have a severe mental impairment.

6    **D.  ALJ's Assessment of Hernandez's Credibility**

7         Finally, Hernandez claims that Social Security Ruling 96-7p mandates that the

8    adjudicator must consider the claimant's subjective complaints, and that the ALJ should consider

9    such factors as daily activities, the descriptions of intensity and frequency of pain, the type and

10   dosage of any medications taken, the treatment received for relief of pain, and other relief

11   measures employed. Mot. Summ. J. at 22; 20 C.F.R. § 404.1529(c)(3).  The Commissioner

12   argues that the ALJ properly considered Hernandez's subjective complaints.

13        Hernandez claims that unless there is affirmative evidence of malingering, an ALJ may

14   reject a claimant's testimony only on the basis of clear and convincing reasons supported by

15   substantial evidence in the record as a whole.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th

16   Cir.1998).  In this case, there is affirmative evidence of malingering in the administrative record.

17   Dr. Kollath noted in her report that Hernandez's performance on the Rey's 15 Item Test was

18   indicative of malingering.  Tr. 15.  A specific and legitimate reason that the ALJ gives for

19   discounting Hernandez's testimony is that "allegations . . . as to the intensity, persistence, and

20   limiting effects of his symptoms were not well supported by the probative evidence."  Tr. 15.

21   The ALJ also noted properly the inconsistencies in Hernandez's statements when Hernandez told

22   Dr. Gable that he did not attend special education classes, but then informed Dr. Kollath that he

23   did go to special education classes.  Tr. 15-16.  Accordingly, the evidence supports the ALJ's

24   finding that portions of Hernandez's testimony were not credible.  The Court may not substitute

25   its judgment for that of the ALJ on this question.  *Tackett v. Apfel*, 180 F.2d 1094, 1098 (9th Cir.

26   1999).

27

28

Case No. C 05-04639 JF
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING FOR
FURTHER PROCEEDINGS.
(JFEX1)                                                    10

1

2                                  **IV. ORDER**

3       Good cause therefore appearing, IT IS HEREBY ORDERED that:

4       (1) Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN

5       PART;

6       (2) Defendant's cross-motion for summary judgment is DENIED; and

7       (3) this case is REMANDED to the Social Security Administration for further

8       proceedings consistent with this opinion.

9

10    DATED: March 30, 2007

11

12                                         _____
                                           JEREMY FOGEL
13                                         United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This Order has been served upon the following persons:

Jean Turk                    jean.turk@ssa.gov

Harvey Peter Sackett         hps@hpspc.com, lucyc@sackettlaw.com; julie@sackettlaw.com;
                             juanita@sackettlaw.com

Sara Winslow                 sara.winslow@usdoj.gov, kathy.terry@usdoj.gov;
                             claire.muller@usdoj.gov